UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES T. CURTIS,

                              Petitioner,

-vs-                                                    Case No.  8:05-cv-863-T-24TBM

SECRETARY,    DEPARTMENT    OF
CORRECTIONS,

                              Respondent.

_____

## <u>ORDER</u>

This cause is before the Court on Petitioner James T. Curtis' 28 U.S.C. § 2254 pro

se petition for writ of habeas corpus. Curtis challenges his conviction for manslaughter

arising out of the Sixth Judicial Circuit, Pasco County, Florida.

BACKGROUND

In October 2000, Curtis was indicted in case no. 00-03304CFAWS for the first

degree murder of a three-year-old male child. Curtis was represented by retained counsel.

The state trial court held a preliminary adversarial hearing after which the court found

probable cause.  On March 16, 2001, Curtis entered a guilty plea to the lesser-included

offense of manslaughter in return for a negotiated sentence of 13.8 years incarceration. On

March 23, 2001, the state trial court sentenced Curtis according to the negotiated sentence.

Judgment was entered that day.

Curtis did not appeal the judgment, which became final 30 days later. <u>See McGee

v. State</u>, 684 So. 2d 241 (Fla. 2d DCA 1996)(treating judgment and sentence upon entry

of plea as final when time for appeal expired). On June 7, 2001, Curtis signed a pro se

petition for writ of habeas corpus seeking a belated appeal. He was ordered to file an amended petition in accordance with the state's oath requirement, which he did. However, on September 17, 2001, Curtis voluntarily dismissed his state petition for writ of habeas corpus. Curtis v. State, 798 So. 2d 732 (Fla. 2d DCA 2001)[table].

On April 1, 2002, Curtis, through retained counsel, filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 in which he raised six grounds for relief. On March 13, 2003, the state trial court summarily denied the first five grounds and directed the state to respond to ground six. Following the State's response indicating an evidentiary hearing was appropriate as to count six, the state trial court scheduled a hearing for August 26, 2004.  However, prior to that date, Curtis abandoned ground six.

On September 17, 2004, the state trial court entered a final order of denial of rule 3.850 relief. On April 22, 2005, the state district court of appeal per curiam affirmed the denial of postconviction relief in case no. 2D04-4368. Curtis v. State, 902 So. 2d 143 (Fla. 2d DCA 2005)[table]. The mandate issued May 24, 2005.

Curtis then timely filed a 28 U.S.C. § 2254 petition on May 2, 2005. The nonconforming  petition was dismissed without prejudice to amend. (Doc. 5)  Curtis timely filed an amended petition on which he is proceeding (Doc. No. 16) (hereinafter petition). The Court ordered Respondent to respond to the petition.  (Doc. No. 17).  Then, on July 25, 2005, Curtis filed a motion asking to voluntarily dismiss grounds six, seven, and eight of his petition.[1]  The court granted the motion on July 27, 2005.

---

[1] In grounds six, seven, and eight, Curtis alleged that his postconviction counsel was ineffective. These claims are not cognizable in a 28 U.S.C. § 2254 petition for writ of habeas corpus.  See Coleman v. Thompson, 501 U.S. 722 (1991).

STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state court's resolutions of issues of law, including constitutional issues, must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. Williams v. Taylor, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To have a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Strickland's two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

DISCUSSION

A review of the record demonstrates that, for the following reasons, Curtis' petition must be DENIED.

3

Summary

Curtis Waived Claims by Entry of Guilty Plea

In grounds one through five, Curtis contends his trial counsel rendered ineffective assistance. In ground one, he faults his counsel for not conducting a presentence investigation "to find out if a homicide or any criminal activity on the part of Petitioner had taken place to cause the death of the victim," (Doc. 16, p. 4-A),  and in particular, for not hiring a medical expert in forensic pathology.  In ground two, he faults his trial counsel for not filing a motion to suppress his inculpatory statements to law enforcement based on Curtis' contention he was questioned after he asked to speak to an attorney. In ground three, Curtis faults his counsel for not filing a motion to suppress his statements arguing that his statements were coerced by police. In ground four, Curtis alleges that his trial counsel should have sought dismissal of the indictment on the ground that a police detective testified falsely at the grand jury proceedings. In ground five, Curtis contends his counsel knew his plea was motivated by fear, coercion, and an alleged failure on the part of counsel to prepare a proper defense. (Doc. No. 16 at 9-B)

Curtis' grounds mirror the claims in Curtis' rule 3.850 motion which was summarily denied by the state trial court.[2]  Because all of the alleged instances of ineffectiveness occurred prior to entry of Curtis' negotiated guilty plea, the claims are waived and foreclosed by entry of Curtis' voluntary plea.

The United States Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea. See Tollett v.

---

[2]  The summary denial was affirmed by the state district court of appeal.

Henderson, 411 U.S. 258, 267 (1973). Following the entry of a guilty plea on the advice of counsel, the scope of a federal habeas corpus inquiry is limited to whether the plea was voluntary and intelligent.[3] Tollett, supra at 266. Only an attack on the voluntary and knowing nature of the plea can be sustained. United States v. Broce, 488 U.S. 563 (1989)(when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary); Matthew v. Johnson, 201 F.3d 353, 364 (5th Cir.)(noting longstanding rule that valid guilty plea bars habeas review of nonjurisdictional claims alleging antecedent violations of constitutional rights), cert. denied, 531 U.S. 830 (2000).

In Curtis' case, the factual underpinnings of grounds one through five are alleged to have occurred, if at all, prior to entry of his plea rather than contemporaneously with the plea.  Therefore, as explained below, Curtis' claims,  premised on nonjurisdictional matters antecedent to, and independent of, the taking of the plea, are waived by entry of the plea.

Ground One

Curtis faults his counsel for not conducting a presentence investigation "to find out if a homicide or any criminal activity on the part of Petitioner had taken place to cause the death of the victim," (Doc. 16, p. 4-A), and in particular, for not hiring a medical expert in forensic pathology.  However, Curtis does not dispute that he was aware, prior to entry of his plea, of the extent of his counsel's investigation of the State's evidence and Curtis' potential defenses. Nor does he dispute that he knew counsel contemplated  securing a

---

[3] A nolo contendere plea stands on equal footing with a guilty plea. North Carolina v. Alford, 400 U.S. 25, 35-36(1970); see also, Vinson v. State, 345 So.2d 711, 715 (Fla. 1977)(nolo contendere plea admits facts for purpose of pending prosecution and to that extent has same effect as guilty plea insofar as it gives court power to punish).

defense expert to testify on causation of the child's death. Curtis' knowing embrace of the favorable plea terms terminated any further inquiry into the State's proof or Curtis' potential defenses. See Neely v. Pennsylvania, 411 U.S. 954, 957 (1973) ("A guilty plea constitutes a waiver of the fundamental rights to a jury trial ... and to be convicted by proof beyond all reasonable doubt.").

## Grounds Two and Three

In ground two, Curtis faults his trial counsel for not filing a motion to suppress his inculpatory statements to law enforcement based on Curtis' contention he was questioned after he asked to speak to an attorney. In ground three, Curtis faults his counsel for not filing a suppression motion arguing that his statements were coerced by police. With respect to grounds two and three, Curtis' knowing and voluntary plea also operated to waive any Fifth Amendment claims relative to his statements to police. See McMann v. Richardson, 397 U.S. 759, 770 (1970)(holding that defendant who pled guilty was not entitled to federal habeas review of claim that his confession was obtained unconstitutionally).[4]

## Ground Four

Curtis alleges that his trial counsel should have sought dismissal of the indictment because a police detective testified falsely at the grand jury proceedings. The waiver rule also forecloses ground four. See Tollett, 411 U.S. at 266-67 (guilty plea foreclosed inquiry into claim of discrimination in grand jury selection).

---

[4] See also Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) (refusing to consider contention that prisoner's attorneys were ineffective because they failed to attempt to prevent use of his confession as pre-plea constitutional violation).

Ground Five

Curtis contends his counsel knew his plea was motivated by fear, coercion, and Curtis' knowledge that his counsel failed to prepare a proper defense. (Doc. No. 16 at 9-B) In support of ground five, Curtis alleges that he was assaulted and tormented "daily" by officers and inmates while in the county jail. Curtis faults counsel for not informing the state trial court of the alleged abuse. Had counsel done so, Curtis maintains, the state trial court could have ordered Curtis housed elsewhere and he would not have entered his plea to escape the torment and to "get out of jail."

Curtis' ineffectiveness of counsel claim raised in ground five, though framed as an involuntary plea contention, does not implicate the voluntariness of the plea. Curtis claims that he was harassed and abused "daily" at the hands of jail personnel and inmates as a result of his charge, and that he was denied medical treatment. Curtis alleges he told his counsel he feared for his life and safety. Curtis does not, however, specifically claim that any of these individuals threatened him in order to force him to enter his guilty plea. Nor does he claim that his counsel or the state trial court coerced him into accepting the plea terms. Curtis accepted the favorable plea terms freely and voluntarily with full awareness of his counsel's actions or lack of action concerning his complaints of mistreatment. As a result of his entry of the free and voluntary plea, Curtis waived his claims that his plea was motivated by the desire to escape the alleged torment or abuse.

Conclusion

After the entry of his guilty plea, Curtis could only challenge the voluntary and intelligent character of the plea and counsel's advice to plead. <u>Hill v. Lockhart</u>, 474 U.S. 52, 56-57 (1985); <u>Tollett</u>, 411 U.S. 258, 267 (1973). None of Curtis' claims challenge the

voluntariness of his plea.

## MERITS OF INEFFECTIVENESS OF COUNSEL CLAIMS

Curtis' voluntary and intelligent plea nullifies his claims of ineffectiveness of counsel in grounds one through five because the claims do not implicate the validity of the plea itself. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir.), cert. denied, 531 U.S. 919 (2000). See also, e.g., Baker v. State, 879 So. 2d 663, 664 (Fla. 4th DCA 2004) (affirming denial of movant's rule 3.850 claim his trial counsel was ineffective for not attacking credibility of codefendant; holding guilty plea cut off inquiry into all issues arising prior to plea and any further attack on credibility of codefendant was rendered pointless by plea).

Furthermore, Curtis fails to meet his burden under the AEDPA standards as to his claims of ineffective assistance of counsel.[5]  Curtis must meet the Strickland standard as well as the Hill v. Lockhart standard.  Curtis has not set out a sufficient basis to meet either prong of Strickland. Even if Curtis could somehow show deficient performance, he must also show that the deficient performance prejudiced the defense. Strickland, at 693-96.  To show prejudice (in the context of a guilty plea), Curtis must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and [would have] insisted on going to trial." Hill, 474 U.S. at 59.

## Ground One

---

[5] Curtis' underlying substantive claims are procedurally barred. Pursuant to state law, a defendant who pleads guilty or nolo contendere without preserving the right to contest court rulings that preceded the plea in the criminal process may appeal only issues which occur contemporaneously with entry of the plea. Robinson v. State, 373 So. 2d 898 (Fla. 1979). Because he did not reserve his underlying issues for appeal, Curtis, by entry of his unconditional plea, defaulted his underlying issues and these issues could not be raised on direct appeal.

Curtis asserts his trial counsel had sufficient basis to call into question whether the child's death resulted from Curtis' criminal acts. According to Curtis, his trial counsel was aware the state's medical examiner could not state with certainty what actually caused the child's asphyxiation. Relying on his postconviction medical expert, Dr. John Feegel, Curtis points to an affidavit in which Dr. Feegel opines that the manner of death should have been designated as "undetermined."   In this affidavit, Dr. Feegel states that he would have testified at trial that the congenital conditions were underestimated and death by homicide was not demonstrated at autopsy.   Curtis argues that, had his trial counsel hired a medical expert and conducted an investigation into the cause of death of the child, his trial counsel would have found that the state could not prove a homicide occurred. Curtis asserts that with the benefit of this information he would have insisted on a jury trial rather than pleading guilty. (Doc. 16 at 4-A)

In denying his ground, the state postconviction court held, in relevant part, as follows:

> Ground 1 — Ineffective assistance of counsel for failure to consult an independent medical expert in forensic pathology
>
> Defendant alleges that counsel should have consulted an independent medical expert in forensic pathology to review the medical examiner's findings in this case. Defendant alleges that he has since consulted such an expert, who reviewed the records in this case and determined that the manner of death should have been called "undetermined," and that death by homicide was not demonstrated at autopsy.
>
> Defendant alleges that had this information been available to him prior to entering his plea, he would have rejected the State's offer and proceeded to trial. Defendant alleges that the assistant medical examiner, Dr. Marie Hanson, stated in the autopsy report that the victim's death was caused by asphyxiation as a result of criminal activity. However, Dr. Hanson testified during the Grand Jury proceeding that it was possible the child asphyxiated on his own vomit, and testified at the adversary preliminary hearing that she

could not rule out the child's previous medical condition as a factor in his death.

These allegations, taken directly from a letter from trial counsel, Robert Attridge, to The Florida Bar and attached to Defendant's motion as Appendix D, are a mischaracterization of the record. Although the record does not include the actual autopsy report, the record does contain the testimony of Dr. Hanson given during both the Grand Jury proceeding and the preliminary hearing. Dr. Hanson testified that the cause of death was asphyxia as a result of homicide, and specifically stated that she could not determine whether the death was the result of an unlawful homicide, as opposed to an accidental or unintentional homicide, as that was a question for the courts. *See Adversarial Probable Cause Hearing Transcript, pp. 96-105; Grand Jury Transcript, p. 25.*[6] The State did inform the Court that Dr. Hanson was expected to testify that the cause of death was through criminal agency, *see Adversarial Probable Cause Hearing Transcript, p. 9*, but that was not Dr. Hanson's testimony. Any opinion presented as to whether the asphyxia was the result of criminal activity was simply in response to questions from defense counsel or the State as to possible scenarios or hypotheticals, which, in turn, were the result of statements given by the Defendant as to what occurred on the night of the child's death. *See Grand Jury Transcript, pp. 26-28; Adversarial Probable Cause Hearing Transcript, pp. 92-95, 139-142.*

Dr. Hansen [sic] testified at the Grand Jury proceeding and at the preliminary hearing as to what the clinical findings would be if the child aspirated on his vomit, but that she found no evidence of such. *See Grand Jury Transcript, pp. 30-33; Preliminary Hearing Transcript, pp. 111-118.* At the preliminary hearing, Dr. Hansen [sic] testified that she was aware of prior diagnoses of the child's medical condition and could not rule out that the child had any of the diagnosed conditions, but that she found nothing in her autopsy to confirm any of those diagnoses. *See Adversarial Probable Cause Hearing Transcript, 129-130.* Dr. Hansen [sic] did not testify that she could not rule out the child's previous medical condition as a factor in his death.

Defendant's medical expert states only that the victim's prior medical history was not given sufficient consideration and that the manner of death should have been called "undetermined." *See Affidavit of John R. Feegel, MD., attached as Appendix C to Defendant's Motion.* Defendant's expert does not state that the victim's prior medical history was the cause of the

---

[6] The Respondent did not file a copy of the transcript of the Grand Jury Proceedings. However, the state trial court attached the necessary relevant pages to its order denying postconviction relief and those pages are part of the record before this Court.

asphyxia or that he could rule out homicide.

Defendant also alleges that the paramedics who treated the child at the scene reported that the child's airway was obstructed, and that the emergency room physician reported that he saw no signs of trauma or that the child had been a victim of a violent act. Additionally, a bruise on the victim's cheek, which was considered as part of the medical examiner's findings, was visible on a home video taken prior to the day of the child's death. Although there is some conflict in the testimony as to the actual number and location of bruises, there is testimony in the record that the victim had more than one bruise on his face, as well as at least one other bruise on his body. *See Adversarial Probable Cause Hearing, pp. 77-78, 90-91, 120-122, 128-129; Grand Jury Transcript, pp. 23, 28-29.* There is also testimony that those bruises were not visible at the time the victim was treated in the emergency room, but were visible later that evening. *See Adversarial Probable Cause Hearing, pp. 133-134; Grand Jury Transcript, pp. 21, 23-24, 29-30.* Moreover, any information or conflicting testimony regarding the victim's bruises was available to Defendant prior to the time he entered his plea.

Furthermore, the record indicates that Defendant entered his plea with the full knowledge that depositions and further investigation had not yet been conducted, experts had been requested but not yet obtained, and possible defenses had not yet been explored. *See Change of Plea, pp. 5-10.* Defendant acknowledged to the Court that he was aware that these things had not yet been accomplished, but that he believed that entering a plea was in his best interest. *See id.* Counsel cannot be considered ineffective for failing to conduct further investigation in the case if Defendant's action in entering a plea precluded counsel from so doing. . . .

(Resp. Exh. 3).

Curtis does not overcome the presumption of correctness of the state trial court's

findings. 28 U.S.C. § 2254(e)(1).  See Marshall v. Lonberger, 459 U.S. 422, 431-32

(1983)(pre-AEDPA case recognizing that state court's factual determinations fairly

supported by record regarding voluntariness of guilty plea in prior proceeding were entitled

to presumption of correctness because findings were based on state court's determination

of defendant's credibility during his testimony before court).

Nor does Curtis overcome the strong presumption that trial counsel's evaluation of

the State's evidence as to the cause of the child's death and counsel's evaluation of potential defenses  was the exercise of reasonable professional judgment.  Strickland, 466 U.S. at 690. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's plea offer and going to trial.  Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991)(internal citation omitted).  See also, Halbert v. Michigan, 125 S. Ct. 2582, 2598 (2005)(When a defendant pleads in open court, there is less need for counsel to develop the record and refine claims to present to an appellate court). Moreover, "[t]he defense of a criminal case is not an undertaking in which everything not prohibited is required. Nor does it contemplate the employment of wholly unlimited time and resources." Smith v. Collins, 977 F.2d 951, 960 (5th Cir. 1992), cert. denied, 510 U.S. 829 (1993).

It is objectively reasonable to conclude that Curtis' counsel investigated and evaluated Curtis' options and advised him of those options.  The decision not to explore further the cause of the child's death fell within the wide range of counsel's reasonable professional assistance.

In his petition, Curtis does not dispute that his trial counsel addressed the cause of child's death and evaluated pursuit of a medical expert. It is evident from his counsel's representations at the plea colloquy that counsel had secured approval for the cost of an expert and had framed various issues, including cause of death, in prior state hearings.

Trial Counsel testified at the plea hearing:

> . . . I want to point out that we've had costs approved by the courts to

> get various experts and other things needed for the defense and we're ready to proceed on that.
>
> And as the court is also well aware, some of the issues we framed in other hearings[7] are the cause of death and the admissibility of the defendant's statements and we've discussed all that and we feel it's in Mr. Curtis' best interest to resolve the case as discussed.

(Resp. Exh. 1, plea hearing at p. 6)  This fact is further supported by counsel's written response to Curtis' complaint to the Florida Bar Association. The letter reflects that trial counsel had developed several possible defenses prior to Curtis' decision to plead, including 1) the cause of the child's death; 2) the alleged perjury of the lead detective during a preliminary adversarial hearing; 3) the alleged unlawful conduct of the police in tricking and coercing Curtis into making certain statements; and,  4) the alleged failure of law enforcement officers to honor Curtis' request for an attorney during the interrogation, thereby violating Curtis' <u>Miranda</u> rights.  (See Exhibit D to Petition, Doc. 16).

As the state trial court's decision denying the rule 3.850 motion and the transcript of the plea colloquy reflect, Curtis entered his plea with full awareness that discovery had not been completed and knew that, by entering his plea he was waiving potential defenses that any future investigation might produce. (Exh. 1, plea hearing at pgs. 9-10). Curtis' acceptance of the favorable plea bargain was an informed election to forego further pursuit of possible defenses. Counsel cannot be considered ineffective where, as here, a competent defendant makes the informed choice not to put on a defense and instead plead guilty to the charges. <u>See</u> <u>Strickland</u>, 466 U.S. at 690-92 (counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on

---

[7] Curtis had two bond hearings and a preliminary adversarial hearing. (Resp. Exh. 1, p. 9)

information supplied by him).

The fact that Curtis, in his state collateral attack, hired a medical expert willing to offer testimony concerning cause of death does not establish any deficiency in his trial counsel's performance. See Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997)(mere fact a defendant can find, years after the fact, a mental health expert who will testify favorably for him does not demonstrate counsel was ineffective for failing to produce that expert at trial). See Horsley v. State of Alabama, 45 F.3d 1486, 1495 (11th Cir. 1995) ("That experts were found who would testify favorably years later is irrelevant.")

The state's medical examiner (hereinafter "expert") testified within a reasonable degree of medical certainty at the preliminary adversarial hearing that the immediate cause of death was asphyxia and death was the result of homicide. (Resp. Exh. 55, T 98)[8] With regard to Curtis' explanation of the death indicating he wrapped the child in a blanket and later found the child turned over on his stomach, the expert testified that this explanation was not consistent with her findings. The expert explained asphyxia by wrapping would require wrapping so tightly that the chest could not expand, and the expert would not expect the child to be able to turn face down if wrapped that tightly. (Resp. Exh. 55 T 99-100, 115)

The expert found there were no natural causes of death. (Exh. 5, T 102) She ruled out asphyxia by vomiting, there being no evidence of occlusion of the airways by vomitus. (Exh. 55, T 111, 113)  The expert was aware of the child's medical history, including that the child suffered from seizures and acid reflux and had fallen in the bathtub hitting his

---

[8] Respondent filed the transcript of the preliminary adversarial hearing in two parts --as Exhibit 5 and Exhibit 55.

head on the morning of his death. (Exh. 55, T 98, 116-17)

This claim can be disposed of on the prejudice prong without addressing the deficiency prong. A mere allegation by the defendant that he would have insisted on going to trial if he had the benefit of the information supplied by his medical expert, although required, is insufficient to establish prejudice. See Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001)(defendant's mere allegation that he would have insisted on trial but for counsel's errors, although necessary, is ultimately insufficient to entitle him to relief on an ineffective assistance claim; rather, the Court looks to factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial); United States v. Arvantis, 902 F.2d 489, 494 (7th Cir. 1990). Curtis' declarations are insufficient to rebut the "strong presumption of verity" afforded his solemn declarations in open court. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Curtis does not reconcile his self-serving statement that he would have insisted on a jury trial with his sworn declarations at the plea hearing that he understood that by entry of his plea at an early stage, he was waiving defenses that further investigation might reveal. (Resp. Exh. 1, plea transcript at p. 10) Nor does Curtis set out objective facts that would explain why he advised the state trial court that he was satisfied with counsel's representation.

Curtis also suggests he pled out of fear. However, his claim of coercion is subjective and insufficient to overcome the presumption of the correctness of his sworn confirmation to the state trial court that he wanted to enter his plea. (Resp. Exh. 1, plea hearing at p. 10) See Ramos v. Rogers, 170 F.3d 560, 566 (6th Cir. 1999) (finding habeas petitioner's alleged "subjective" impressions insufficient to undermine his own statements at the plea colloquy). United States v. Martinez-Molina, 64 F.3d 719 (1st Cir. 1995) (crediting district

15

court's determination, made during the plea colloquy, that the defendant had not been pressured, rather than defendant's later self-serving statements).

Curtis' allegation that he would have gone to trial rather than plead but for the alleged ineffectiveness of counsel is disputed by an additional factor. Counsel obtained an advantageous plea bargain for Curtis, shielding him from exposure to a potential death sentence.

Grounds Two and Three

In grounds two and three, Curtis alleges that trial counsel should have sought suppression of his statements to police by claiming he was interrogated after he asked for counsel and also that his inculpatory statements were the product of police coercion. Curtis' claims are based on speculation as to a favorable suppression order.

These claims fail under the Strickland prejudice prong as well. Curtis does not show that the state court would have been obliged to accept his theories for suppression of his statements to police.  Moreover, it is objectively reasonable to conclude, based on the facts known at the time of the plea, that he would not have pursued the suppression of his statements if it meant risking the possibility of proceeding to trial and a possible death sentence.

Ground Four

Curtis contends that his counsel had a duty to raise the issue that his indictment was based on the alleged perjured testimony of lead police detective Jackie Pehote.  This claim has no merit. In his rule 3.850 motion, Curtis alleged:

> The lead investigator on this case Cpl. Pehote, was called to testify before the Grand Jury.  She would later acknowledge that portions of her testimony were false, e.g., that she never told the Curtises they could not

16

leave the state, that Mrs. Curtis was never told she would be arrested for first-degree murder.  Video tapes of her interrogation would reveal this to be false.  (It would also be exposed, and later admitted by Cpl. Pehote, that she further testified falsely before the Grand Jury as well as at the adversarial hearing when she stated that the child was covered with bruises all over his body, and the Medical Examiner, Dr. Hansen [sic], saw this.  At the preliminary hearing, Dr. Hansen [sic] testified that the bruising was just on the child's face.)  Mr. Attridge [defense attorney] knew of this prior to the plea hearing.  He knew the indictment could not be a "True Bill" if founded on such perjury, and was therefore voidable.  Yet he never made any motion to strike or set-aside the indictment.

(Resp. Exh. 2,  p. 19)

The state trial court, in denying relief, stated:

Defendant alleges that Detective Pehote testified falsely regarding two items.  First, that she never told the Defendant and his wife that they could not leave the state, and second, that the victim had bruises all over his body. With regard to Defendant's first allegation, Defendant states that Detective Pehote later acknowledged that her testimony that she never told the Curtises they could not leave the state was false, and that the video tape of her interrogation would reveal this to be false.   Detective Pehote testified before the Grand Jury that Defendant had been phoning her and asking if he could go back to Maine, but that she told him he couldn't go back until her investigation was complete. *See Grand Jury Transcript, p. 15.*  As Defendant is claiming that Detective Pehote's assertion that she did not tell Defendant he could not leave the state was perjury, any alleged perjury would have occurred after the Grand Jury proceeding.  Therefore, the indictment would not have been obtained at least in part by perjured testimony and counsel would have no basis, on this allegation to have the indictment set aside.

Furthermore, there is nothing in the record to show that Detective Pehote acknowledged that her testimony was false. Detective Pehote acknowledged during the preliminary hearing that her written report indicates she told the Curtises they could not leave the state. *See Adversarial Probable Cause Hearing, pp. 22.*  However, she continued to assert at the preliminary hearing that she did not prohibit the Curtises from leaving the state, but indicated to them that she wanted them available if needed for investigation purposes. *See Adversarial Probable Cause Hearing, pp. 21-23, 60-62.*  Nor does the videotape, transcribed as part of the hearing, reveal her testimony to be false, as the subject of the Curtises leaving the state is never mentioned.  *See Adversarial Probable Cause Hearing Transcript, pp. 38-56.* The inconsistencies in Detective Pehote's testimony and in her written report were known to the defense at the time he decided to enter his plea before

17

further investigation could be conducted or motions filed.

       With regard to Defendant's allegation that Detective Pehote testified falsely regarding the victim having bruises all over his body, the record does not support Defendant's claim. Detective Pehote testified before the grand jury that she was told by a representative of the Child Protection Team that the hospital had contacted her and said that they had located several bruises on the victim's body. *See Grand Jury Transcript, pp. 5-6.* Detective Pehote further testified that she accompanied a doctor on a physical examination of the victim and that they observed bruises on the shoulder, the forearm, the buttocks, and the stomach. *See id.*

       Contrary to Defendant's assertion, the Medical Examiner, Dr. Hanson, did not testify that the bruising was just on the child's face. Although Dr. Hanson testified that the victim's body was not "covered in bruises" at the time of the autopsy, she did testify that she observed bruises on the victim's shoulders in addition to the bruises on the victim's face. *See Adversarial Probable Cause Hearing Transcript, pp. 120-122.* Although Defendant states that it "would also be exposed and later admitted by Cpl. Pehote, that she further testified falsely before the Grand Jury as well as at the adversarial preliminary hearing" regarding the bruises, Defendant has provided no information or documentation as to where, when, or in what context the exposure or admissions were made. Accordingly, although there may be minor discrepancies in the testimony, the record does not support Defendant's allegations of perjury and Defendant's claim that Detective Pehote admitted to perjury is insufficiently alleged.

(Resp. Exh. 3).

Curtis does not overcome the presumption of correctness of the state trial court's findings because Curtis has failed to show that Pehote's statements were perjured testimony. <u>See</u> <u>United States v. Dunnigan</u>, 507 U.S. 87, 94 (1993). (Perjury is giving "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.") Curtis has not shown that Pehote testified about a material matter with the willful intent to provide false testimony, or that her alleged perjured testimony was anything more than "misstatements."

Curtis benefitted from his defense attorney's raising the issue of Pehote's

"misstatements" at the preliminary adversarial hearing.  After the hearing, the State offered Curtis a favorable plea agreement, allowing him to plead guilty to manslaughter with a 13.8 year sentence, thereby avoiding trial on a first degree murder charge that would have resulted in a much greater sentence if he were found guilty.  (See Exhibit F to Curtis' reply, Doc. No. 33).

Ground Five

Curtis faults his counsel for allowing him to plead rather than proceed to trial when trial counsel purportedly knew his plea was motivated by fear. Curtis' statement that he was satisfied with trial counsel's representation at the change of plea and that he wanted to plead belie his assertions, and Curtis does not overcome the presumption of correctness of his sworn plea declarations in such regard.

For the above reasons, Curtis is not entitled to habeas corpus relief.

Motion To Supplement Petition

On February 16, 2006, Curtis filed a motion seeking to add two claims to his 28 U.S.C. § 2254 petition:

> 1. The trial court erred when it denied Curtis' 3.800 claim that Curtis was promised a plea to his lowest guideline sentence and when the State and defense counsel calculated the sentence as 13.8 years using an improper scoresheet.

> 2. The trial court erred when it denied Curtis' 3.800 claim alleging Curtis was improperly given 120 victim injury points on his scoresheet when Curtis did not admit to any form of homicide.

Curtis' proposed claims amount only to a claim of state law sentencing error. Determination of the applicable sentencing range under Florida's sentencing guidelines is a matter solely within the province of the Florida courts. Federal habeas relief is not

19

available for errors of state law as "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. Johnson v. Singletary, 883 F. Supp. 1535, 1542 (D. Fla. 1995) (citing Branan v. Booth, 861 F.2d 1507 (11th Cir. 1988)); Carrizales v. Wainwright,  699 F.2d 1053 (11th Cir. 1983); Jones v. Estelle, 622 F.2d 124 (5th Cir.), cert. denied, 449 U.S. 996 (1980); Willeford v. Estelle, 538 F.2d 1194 (5th Cir. 1976). A state's error in applying its sentencing guidelines is not reviewable by a federal court, even when "couched in terms of equal protection and due process. Branan v. Booth, 861 F.2d at 1508.    In addition, the state trial court referred to the scoresheet and new guidelines range and orally announced the guideline range prior to Curtis' entry of the plea, and any defect was cured before his plea.  Curtis is bound by the Florida courts' state law determinations, and he has defaulted any federal claim regarding sentencing compliance with his plea bargain. He does not allege and show cause to excuse his defaults, and he does not show actual prejudice; nor does he meet the fundamental miscarriage of justice exception to allow federal review of this proposed claim.

Whether to allow amendment of a habeas petition is a determination reviewed by the Eleventh Circuit for an abuse of discretion. See Gillette v. Tansy, 17 F.3d 308, 312 (11th Cir. 1994). This Court has discretion to deny amendment/supplement of the petition where Curtis' additional claims comprise state law matters or where the matters are procedurally barred on independent and adequate state grounds. And, alternatively, even if the supplemental grounds were addressed, Curtis does not meet his burden of showing that the state trial court's decision resulted in an unreasonable application of federal law

20

as clearly established by the Supreme Court at the time or an unreasonable application of the facts in light of the evidence.

Accordingly, the Court orders:

1. That Petitioner's motion for leave to file supplement (Doc. No. 43) is denied.

2. That Petitioner's motion to inform the Court (of his new address) (Doc. No. 49) is denied.  (See also Doc. No. 46 stating that "Because Petitioner presented extensive facts and argument in his motion to supplement, Petitioner may not file a reply to the response." )  Petitioner sought to file a reply to the Respondent's response in Doc. No. 49.

3. That Petitioner's petition for writ of habeas corpus is denied, with prejudice.  The Clerk is directed to enter judgment against Petitioner and to close this case.

4. IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not

21

entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on July 3, 2006.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record

James T. Curtis